IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN HUMMEL III,                 :     CIVIL ACTION
                                 :     NO. 22-2332
          Plaintiff,             :
                                 :
     v.                          :
                                 :
JH CORNELIA, LLC, et al.,        :
                                 :
          Defendants.            :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         April 25, 2023


**I.    INTRODUCTION**

Plaintiff, John Hummel, III, brings this action against JH Cornelia d/b/a Chick-fil-a Willow Grove (hereinafter, "Cornelia"), the owner and operator of Cornelia, Eric Stephens, and an employee of Cornelia, Shakuur Phillips (collectively "Defendants"). Plaintiff's Second Amended Complaint contains five counts: (1) Count I asserts a state law claim for assault and battery; (2) Count II asserts a hostile work environment claim under Title VII; (3) Count III asserts a retaliation claim under Title VII; (4) Count IV asserts a state law intentional infliction of emotional distress claim; and (5) Count V asserts a negligent hiring/supervision claim.

Before the Court are Defendants Stephens' and Cornelia's motion to dismiss as well as Defendant Phillips' motion to dismiss and strike.[1] For the reasons set forth below, Defendant Phillips' motion to dismiss will be granted and his motion to strike will be granted in part and denied in part. Defendants Stephens' and Cornelia's motion to dismiss will be granted in part and denied in part.

## II.   BACKGROUND[2]

Plaintiff's claims arise from an alleged unwanted male-on-male sexual encounter with Phillips which occurred on the top floor of a parking garage adjacent to the premises of Cornelia that was oftentimes used for employee parking. See Second Am. Compl. ¶ 25, ECF No. 34. Plaintiff and Phillips were co-workers, employed by a Chick-Fil-A franchise owned by Cornelia and managed by Stephens. Id. at ¶¶ 5, 13. Plaintiff alleges that, prior to the sexual assault, the workplace maintained by Cornelia and Stephens was marred by consistent, repeated and

---

[1] Plaintiff's original Complaint was dismissed without prejudice. See Oct. 28, 2022 Order, ECF No. 27. The Court allowed Plaintiff leave to file a Second Amended Complaint nunc pro tunc. See Jan. 30, 2023 Order, ECF No. 37.

[2] The facts alleged by Plaintiff and asserted herein are accepted as true and viewed in the light most favorable to Plaintiff. Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).

pervasive sexually inappropriate speech, touch, innuendo, and horseplay. Id. at ¶ 26.

On the date of the unwanted sexual encounter, Plaintiff was allegedly with Phillips because Phillips had offered to provide Plaintiff with information that Phillips told Plaintiff he needed to know and understand to help Plaintiff prepare for a potential job interview on the corporate level and advance Plaintiff's career.[3] Id. at ¶¶ 30-31. Phillips then made repeated attempts to touch Plaintiff's penis and remove his penis from his pants. Id. at ¶ 32. Plaintiff resisted Phillips' touching, including by telling Phillips to "stop" and "chill." Id. at ¶ 33. Phillips persisted over Plaintiff's objections, removing Plaintiff's penis from his pants and performing oral sex on Plaintiff. Id. at ¶¶ 34-35.

After the alleged encounter, Plaintiff reported the sexual encounter to the Abington Township Police, and the Police Department then contacted Plaintiff's employer--Cornelia. Id. at ¶ 38. Phillips was fired sometime thereafter but was later permitted to return to work. Id. at ¶ 44.

In the days following the event, Plaintiff allegedly expressed anxiety to his employers about returning to the

---

[3] While Plaintiff and Phillips were both at work that day, the Amended Complaint does not allege that they were both "on the clock" or "off the clock" when the alleged encounter occurred.

parking lot for employment duties for fear that he would be approached by Phillips and because returning to the parking lot triggered painful memories. Id. at ¶ 39. Despite his communications, Plaintiff was directed to work in the parking lot. Id. at ¶ 40. When he refused, Plaintiff was allegedly verbally berated, written up, and had his hours significantly reduced. Id. at ¶ 41. For example, one of Plaintiff's supervisors told Plaintiff that he should consider himself "lucky" that he still had a job at Cornelia after the complained of event with Phillips. Id. at ¶ 42.

Three weeks after the event, Plaintiff resigned.[4] Id. at ¶ 43. Plaintiff continues to suffer significant stress and emotional trauma as a result of the alleged encounter. Id. at ¶ 45. Plaintiff alleges that despite Plaintiff's complaints against Phillips, Stephens and Cornelia failed to remedy Phillips' behavior or permanently terminate his employment. Id. at ¶ 48.

Plaintiff alleges that he has suffered loss of income, future pecuniary losses, emotional pain, and humiliation due to Defendants' willful, discriminatory conduct that created a hostile work environment. Id. at ¶¶ 52-54. Accordingly,

---

[4] Although Phillips was fired after the alleged encounter at issue, he was apparently rehired after Plaintiff had resigned. Id. at ¶ 44.

Plaintiff seeks punitive damages against all Defendants, jointly and severally. Id. at ¶ 53.

## III. LEGAL STANDARDS

### A. Motion to Dismiss

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion

couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. <u>See, e.g.</u>, <u>Gelman v. State Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. <u>See</u> <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994); <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

## B. <u>Motion to Strike</u>

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[S]triking a portion of a pleading is a drastic remedy," and Rule 12(f) motions "are viewed with disfavor by the federal courts and are infrequently granted." 5C Charles Alan Wright &

Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1380 (3d ed. 2021). To succeed on a motion to strike, a movant must show that "the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration" and that "their presence in the pleading throughout the proceeding will be prejudicial to the moving party." <u>Id.</u>

**IV.   DEFENDANT PHILLIPS' MOTION TO DISMISS AND MOTION TO STRIKE**

**A.   <u>Motion to Dismiss Plaintiff's Intentional Infliction of Emotional Distress Claim (Count IV)</u>**

A claim for intentional infliction of emotional distress ("IIED") requires a claimant to show that (1) the conduct is extreme and outrageous; (2) the conduct is intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe. <u>Arnold v. City of Philadelphia</u>, 151 F. Supp. 3d 568, 579 (E.D. Pa. 2015) (citing <u>Williams v. Guzzardi</u>, 875 F.2d 46, 50-51 (3d Cir. 1989) and <u>Chuy v. Phila. Eagles Football Club</u>, 595 F.2d 1265, 1273 (3d Cir. 1979)); Restatement (Second) of Torts § 46. Additionally, a plaintiff "must suffer some type of resulting physical harm due to the defendant's outrageous conduct." <u>Reedy v. Evanson</u>, 615 F.3d 197, 231 (3d Cir. 2010) (quoting <u>Swisher v. Pitz</u>, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)).

"[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary

to provide a basis for recovery for the tort of intentional infliction of emotional distress." <u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d Cir. 1988). And, "as a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for the intentional infliction of emotional distress." <u>Hoy v. Angelone</u>, 720 A.2d 745, 754 (Pa. 1998) (quoting <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1487 (3d Cir. 1990)).

Plaintiff seemingly relies solely upon Plaintiff's one alleged sexual encounter with Phillips to establish his emotional infliction of emotional distress claim. While Plaintiff pleads that the sexual conduct on this one occasion was "unwanted" and "unconsented," Plaintiff fails to allege any facts that Phillips' behavior was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." <u>McGreevy v. Stroup</u>, 413 F.3d 359, 371 (3d Cir. 2005) (quoting Restatement (Second) of Torts § 46 (cmt)). Moreover, Plaintiff has not alleged that Phillips, who is alleged to have had actual and apparent supervisory authority, Second Am. Compl. ¶¶ 10-11, took any retaliatory actions against Plaintiff after the encounter. <u>Cf.</u> <u>Carter-Herman v. City of Philadelphia</u>, No. 95-cv-4030, 1995 WL 764574, *6 (E.D. Pa. Dec. 21, 1995) ("[W]here the allegations involve

8

severe sexual harassment combined with retaliation, a claim of intentional infliction of emotional distress cannot be dismissed at the pleading stage." (citations omitted)).

As the Pennsylvania Supreme Court has stated, "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Hoy, 720 A.2d at 754 (quoting Restatement (Second) of Torts § 46, cmt. d)). Therefore, Plaintiff's claim for intentional infliction of emotional distress will be dismissed.[5]

### B. **Motion to Strike**

Phillips seeks to strike Paragraph 37 and all reference to Plaintiff's alleged status as a minor in the Second Amended Complaint. In the Second Amended Complaint, Plaintiff alleges that he "endured an unwanted sexual encounter with Defendant Phillips" and that he "did not and could not consent to the sexual encounter with Defendant Phillips" because he was a

---

[5] Phillips notes in his argument that the Second Amended Complaint states that the incident at issue was a "consented to sexual encounter . . ." Second Am. Compl. ¶ 25. Plaintiff asks for leave to amend Paragraph 25 to read "non-consensual" given that the "consensual" language is a typographical error when read against the remainder of Plaintiff's Second Amended Complaint. Leave will be granted to change the word "consensual" to "non-consensual" in Paragraph 25.

seventeen-year-old minor at the time. See Second Am. Compl., ¶¶ 36-37 (emphasis added). Phillips argues that that Plaintiff's status as a minor should be stricken from the Second Amended Complaint because it does not pertain to the issues raised and improperly casts a derogatory light upon Phillips.  See Phillips' Mot. 10, ECF No. 42.

Although it is true that Plaintiff was legally capable of consenting to the encounter as a matter of law,[6] it is also true that his age--seventeen at the time of the encounter--is a relevant factor in considering Plaintiff's state of mind. The Pennsylvania Supreme Court has stated that forcible compulsion includes "not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." Commonwealth v. Rhodes, 510 A.2d 1217, 1226 (Pa. 1986). Construing the facts in a light most favorable to Plaintiff, a reasonable inference can be drawn that Plaintiff's age of seventeen at the time of the incident weighs against the contact

---

[6] Courts have held that a sixteen-year-old is legally capable of consenting to sexual intercourse with an adult. See Teti v. Huron Ins. Co., 914 F. Supp. 1132, 1139-40 (E.D. Pa. 1996); 18 Pa. Cons. Stat. § 3121 (West 1995) (criminal rape statute); 18 Pa. Cons. Stat. § 3122.1 (West 1995) (defining "statutory sexual assault" as a "person engag[ing] in sexual intercourse with a complainant under the age of 16 years [if] that person is four or more years older than the complainant and the complainant and the person are not married to each other").

being consensual and in favor of there being other "moral, psychological or intellectual force[s]" at play. Id. Both parties agreed on the record that striking "could not" from Paragraph 37 was satisfactory. Therefore, the "could not" language will be stricken from Paragraph 37.

**V.  DEFENDANTS CORNELIA'S AND STEPHENS' MOTION TO DIMISS**

**A. <u>Plaintiff's Title VII Hostile Work Environment Claim (Count II)</u>**

The following five elements must be established by a plaintiff bringing a hostile work environment claim pursuant to Title VII:

> (1) the plaintiff suffered intentional discrimination because of the plaintiff's membership in a protected class;[7]
> (2) the discrimination was pervasive and regular;
> (3) the discrimination detrimentally affected the plaintiff;

---

[7] Cornelia argues that Plaintiff has not alleged that he is a member of a protected class, however, <u>Moody v. Atlantic City Board of Education</u>, 870 F.3d 206, 214 (3d Cir. 2017), held that a Plaintiff who had been touched sexually was subject to such harassment due to her sex. Further, Cornelia argues that Plaintiff does not satisfy the three prongs laid out by the Third Circuit in <u>Bibby v. Philadelphia Coca Cola Bottling Co.</u>, 260 F.3d 257, 262 (3d Cir. 2001), to establish same-sex sexual harassment. In <u>Bibby</u>, the Third Circuit laid out the evidentiary means by which a plaintiff could prove same-sex harassment in the workplace:

> Thus, there are at least three ways by which a plaintiff alleging same-sex sexual harassment might demonstrate that the harassment amounted to discrimination because of sex--the harasser was motivated by sexual desire, the harasser was expressing a general hostility to the presence of one sex in the workplace, or the harasser was acting to punish the victim's noncompliance with

(4) the discrimination would detrimentally affect a
reasonable person of the same sex or race in that
position; and
(5) there is a basis for vicarious liability.

See Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d

Cir. 1990); Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001). In

determining whether a work environment is hostile or abusive,

courts must look at numerous factors, including "the frequency

of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive

utterance; [and] whether it unreasonably interferes with an

employee's work performance." Harris v. Forklift Sys., Inc., 510

---

gender stereotypes. Based on the facts of a particular
case and the creativity of the parties, other ways in
which to prove that harassment occurred because of sex
may be available.
260 F.3d at 264. Here, the behavior alleged in the Second
Amended Complaint gives rise to the reasonable inference that
the harasser was motivated by sexual desire.

Additionally, the facts at issue here are distinguishable from
those in the cases relied on by Cornelia, where courts held that
a plaintiff failed to state a claim when the conduct alleged was
retaliatory in nature or focused on a single incident. See Perez
v. RHP Staffing Co., 21-cv-1314, 2021 WL 4583850 (E.D. Pa. Oct.
6, 2021); Betz v. Temple Health Sys., No. 15-cv-727, 2015 WL
4713661 (E.D. Pa. Aug. 7, 2015). However, Perez is
distinguishable because Plaintiff here did allege that there was
discriminatory conduct prior to the alleged sexual encounter at
issue. Betz is also distinguishable because the court there
found that plaintiff did not allege that the inappropriate
conduct was directed at her, whereas here, Plaintiff alleges
that the conduct at issue was, at least in part, directed at
him.

12

U.S. 17, 23 (1993), reaff'd by Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).

Prior to the sexual encounter at issue, Plaintiff alleges that the workplace was marked by "consistent, repeated and pervasive sexually inappropriate speech, touch, innuendo and sexual 'horseplay' including overt references, offensive discussion and simulated sexual acts and related touching . . . ." Second Am. Compl. ¶ 26, ECF No. 34. Plaintiff also alleges that the sexual encounter interfered with his work performance because being asked to perform certain work tasks made him fearful and triggered painful memories. Id. at ¶ 39. After Plaintiff expressed his discomfort, he was allegedly berated by supervisors, including by being told he was "lucky" to still be in his position, he was subjected to disciplinary action, and his hours were reduced. Id. at ¶ 42. Thus, Plaintiff alleges that the offensive and inappropriate jokes were consistent and pervasive before the sexual assault; that he was sexually assaulted by his co-worker, interfering with his work performance; and that he was berated by supervisors and had his hours reduced after the sexual assault. Construing the facts alleged in a light most favorable to Plaintiff, the Court can

draw the reasonable inference that the work environment at

Cornelia was indeed hostile.[8]

## C. **Plaintiff's Title VII Retaliation Claim (Count III)**

To establish a prima facie case of retaliation under Title

VII, a plaintiff must allege that (1) they engaged in a

protected activity; (2) they suffered an adverse employment

action; and (3) there was a causal connection between the

protected activity and the adverse employment action. See

Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 257 (3d

Cir. 2017) (citing Moore v. City of Philadelphia, 461 F.3d 331,

340-41 (3d Cir. 2006)). The first element requires, at the very

least, an informal protest of discriminatory employment

---

[8] Cornelia and Stephens argue that the hostile work environment
claim is barred due to a failure to exhaust administrative
remedies. Before commencing a Title VII action in federal court,
a plaintiff must exhaust their administrative remedies by filing
a timely Charge of Discrimination with the EEOC and receiving a
right-to-sue letter from the EEOC after it investigates the
Charge. 29 U.S.C. § 626(d)(1); Barzanty v. Verizon Pa., Inc.,
361 F. App'x 411, 413 (3d Cir. 2010) (citing 42 U.S.C. §§ 2000e-
5(b), (e)(1), and (f)(1)). The relevant test in determining
whether a plaintiff has exhausted their administrative remedies
is "whether the acts alleged in the subsequent Title VII suit
are fairly within the scope of the prior EEOC complaint, or the
investigation arising therefrom." Navarro v. Wal-Mart Assocs.,
Inc., No. 19-201-LPS, 2020 WL 777202, at *3 (D. Del. Feb. 18,
2020) (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir.
1984)). Courts liberally construe the administrative filing.
Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 1999).
Although Plaintiff checked the boxes for "retaliation" and
"other" in the Charge he filed with the EEOC, construing the
Charge liberally, it is likely that Plaintiff's hostile work
environment claim is fairly within the scope of the EEOC
complaint.

practices. Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02
(3d Cir. 1995). And the protest must specifically relate to the
protected conduct allegedly being infringed. Id. at 701.

Here, Plaintiff reported his sexual assault, a form of sex
discrimination, to the police, who in turn notified his
employer. These circumstances constitute protected activity. See
42 U.S.C. 2000e-3(a) (Title VII prohibits an employer from
discriminating against an employee who has opposed an employer's
discriminatory conduct or "has made a charge, testified,
assisted, or participated in any manner in an investigation,
proceeding, or hearing" related to an employer's discriminatory
conduct.). Additionally, Plaintiff has alleged to have suffered
an adverse employment action when he had his hours reduced after
refusing to return to the parking lot, which triggered painful
memories of the alleged sexual encounter and made him fearful.
However, Plaintiff does not sufficiently allege the third
factor--causation--because he has not sufficiently pleaded that
the alleged retaliatory conduct was due to Plaintiff's
engagement in protected activity. As the Second Amended
Complaint explains, Plaintiff's hours were not reduced after the
police came to his workplace to investigate the alleged sexual
assault. Rather, Plaintiff contends that it was only once he
refused to engage in standard employment related tasks, working
in the parking lot area, that he was disciplined by his

supervisors and had his hours reduced. <u>See</u> Second Am. Compl. ¶¶ 40-41. Accordingly, Plaintiff has failed to meet an essential element to establish a prima facie case of retaliation under Title VII, and thus, Count III will be dismissed.

D. **<u>Plaintiff's Negligent Hiring and Supervision Claims (Count V)</u>**

Under Pennsylvania law, negligent supervision claims arising out of discrimination cases must be brought under the PHRA. 77 P.S. § 481(a); <u>Black v. Cmty. Educ. Centers, Inc.</u>, No. 13-cv-6102, 2014 WL 859313, at *4 (E.D. Pa. Mar. 4, 2014) ("[I]t is firmly established that negligent supervision claims arising out of discrimination cases . . . in . . . Pennsylvania must be brought under the [PHRA]." (alterations in original)). Established Pennsylvania law holds that negligent supervision claims are barred by the Workmen's Compensation Act ("WCA") and must be dismissed when brought by employees. 77 P.S. § 481(a); <u>Murray v. Com. Union Ins. Co.</u>, 782 F.2d 432, 437 (3d Cir. 1986). Plaintiff admits that the negligent supervision claim under the PHRA is ongoing and avers that he will seek leave to amend and reassert this claim that the conclusion of the administrative process. Notwithstanding, this claim is premature at this time.

Similarly, the law also holds that negligent hiring claims are barred by the PHRA. <u>Id.</u> at 436 (holding that Pennsylvania courts do not recognize a common law cause of action where a

statute provides plaintiff with a legal remedy); 43 P.S. §
962(b). Moreover, Plaintiff's negligent hiring claim is
insufficient. "A claim for negligent hiring under Pennsylvania
law requires a plaintiff to demonstrate that (i) an employer
knew or should have known of an employee's propensity for
violence, and (ii) the employment created a situation where the
violence could harm a third party." Court v. Loews Phila. Hotel,
Inc., No. 16-cv-4848, 2017 WL 569522, at *4 (E.D. Pa. Feb. 13,
2017) (citing Coath v. Jones, 419 A.2d 1249, 1250 (Pa. Super.
Ct. 1980)); see also Rios v. Marv Loves 1, No. 13-cv-1619, 2015
WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015). Plaintiff failed to
establish why or how Cornelia knew or should have known of
Phillips' propensity.[9] Based on Plaintiff's failure to make the
required averments, Count V of Plaintiff's Complaint will be
dismissed.

E. **Plaintiff's Intentional Infliction of Emotional Distress
Claim against Cornelia and Stephens (Count IV)[10]**

---

[9] Plaintiff avers that he needs additional discovery to develop
further information as to what Defendants knew or should have
known, but this averment is not enough to survive a motion to
dismiss.

[10] Defendants argue that Plaintiff's claim for intentional
infliction of emotional distress against Cornelia and Stephens
is barred by the exclusivity provisions of the WCA. The Court
need not address this issue because the claim cannot survive on
the merits.

Because Plaintiff brings his intentional infliction of emotional distress claim against Defendants Cornelia and Stephens for Defendant Phillips' actions, he must rely on vicarious liability. Under the theory of respondeat superior, an employer "is vicariously liable for the wrongful acts of an employee if that act was committed during the course of and within the scope of employment." Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 39 (Pa. Super. Ct. 2000) (citing Fitzgerald v. McCutcheon, 410 A.2d 1270 (Pa. 1979)). An employee's conduct is considered "within the scope" of employment for purposes of vicarious liability if:

> (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

Spitsin v. WGM Transp., Inc., 97 A.3d 774, 778 (Pa. Super. Ct. 2014) (quoting Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493 (Pa. Super. Ct. 1998)).

Assuming arguendo, that Defendant Phillips' alleged conduct rises to the level of "extreme and outrageous" under Pennsylvania law--which, as discussed above, it does not-- Plaintiff fails to state an IIED claim against Defendants Stephens and Cornelia because he cannot allege that Defendant Phillips' conduct occurred within the scope of his employment.

18

Because Plaintiff fails to plausibly allege that Phillips'
conduct occurred within the scope of his employment, he cannot
hold Stephens and Cornelia vicariously liable.

Second, even assuming that vicarious liability is
established, as noted above, the conduct here does not rise to
the level of outrageousness necessary to provide a basis for
recovery of the tort of IIED. Therefore, Count IV will be
dismissed.

## VI.   LEAVE TO AMEND

Leave to amend should be freely granted unless there is an
apparent reason why it should not be, such as futility of
amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). Given that
this is Plaintiff's "second bite at the apple," and the Second
Amended Complaint does not contain substantial new factual
allegations as to Counts III and IV, the retaliation and IIED
claims will be dismissed without leave to amend. Plaintiff may
seek leave to amend the negligent supervision and hiring claim
(Count V) down the road once the claims are properly exhausted
in state court.

## VII.  CONCLUSION

As set forth above, the Court will grant Phillips' motion
to dismiss, and the "could not" language will be stricken from
Paragraph 37 of the Second Amended Complaint. The Court will

also grant Defendants Cornelia's and Stephens' motion to dismiss as to Count III (retaliation), IV (IIED) and V (negligence claims). However, the Court will deny Defendants Cornelia's and Stephens' motion to dismiss as to Count II (hostile work environment). Plaintiff will be granted leave to amend the word "consensual" to "non-consensual" in Paragraph 25 of the Second Amended Complaint.

An appropriate order follows.